Benedict A. Kausal, Jr. v. Commissioner.
Kausal v. Commissioner
Docket No. 55497.
United States Tax Court
T.C. Memo 1956-289; 1956 Tax Ct. Memo LEXIS 8; 15 T.C.M. (CCH) 1500; T.C.M. (RIA) 56289; December 31, 1956
Daniel G. Glasser, Esq., for the petitioner. J. Bruce Donaldson, Esq., for the respondent. KERN determined deficiencies in petitioner's income taxes for 1951 and 1952 as follows: Year
Deficiency
1951
$800.85
1952
460.10
The issues for decision are: 1. Whether the respondent is barred from assessing deficiencies for 1951 and 1952 based upon the disallowance of the carryovers of a net operating loss claimed in 1950, a closed year under the statute of limitations. 2. Whether petitioner *9 suffered a net operating loss in 1950 upon the failure of a corporation of which he was the sole stockholder and to which he had advanced additional funds. Findings of Fact The petitioner presently resides in Dayton, Ohio. For the calendar years 1950 and 1951 he filed timely individual Federal income tax returns with the collector of internal revenue for the first district of Illinois, and for the calendar year 1952 he filed a timely return with the collector of internal revenue at Indianapolis, Indiana. The notice of deficiency was mailed to petitioner on October 5, 1954. On September 15, 1947, McHenry County Motor Sales, Inc. (hereinafter referred to as McHenry Motors) was a corporation created under the laws of Illinois. The corporation was engaged in business as a franchised dealer in Kaiser-Frazer motor cars in Woodstock, Illinois. It sold both new and used cars and did repair work employing two mechanics regularly. At all times material herein, its total issued and outstanding stock consisted of 210 shares of common stock. Petitioner acquired all the shares of McHenry Motors for $2,500 as follows: September 15, 1947
105 shares
May 25, 1948
105 shares
*10 The corporation rented the building in which it conducted its business from Benedict A. Kausal, Sr., for $125 a month. On December 31, 1949, it owed over a year's rent. McHenry Motors did not have sufficient assets to obtain the financing from banks and lending institutions required for the purchase of automobiles, but petitioner, through personal friends in Commercial Credit Corporation for which he had previously worked, was able to arrange a line of credit to himself individually but not to his corporation. On May 25, 1948, petitioner borrowed $1,000 from his mother, Mary A. Kausal, and this amount was advanced by him to the corporation on the same date. Petitioner, individually, repaid this amount to his mother. On September 21, 1948, petitioner borrowed $500 from Blackhawk Loan Agency and this amount was advanced by him to the corporation in October 1948. McHenry Motors paid some of the interest charges but the loan was repaid by petitioner individually. On October 25, 1948, Richard V. Kausal transferred an automobile he owned to the corporation which, as consideration therefor, executed and delivered to him its promissory note in the amount of $2,542. Petitioner signed *11 the note as guarantor of the obligation. McHenry Motors never paid the note but Richard Kausal gave it credit for approximately $1,000 on the transfer to him of some leftover parts, desks, and a filing cabinet. The fair market value of these items was about $200. The balance of approximately $1,500 was subsequently paid him by petitioner. On February 17, 1949, petitioner borrowed $1,500 from R. F. Bailey and advanced this amount to the corporation on or about the same date. Petitioner and not the corporation made repayment. Petitioner borrowed approximately $3,100 from the First National Bank of Woodstock on two notes. He used the money borrowed from Bailey to retire one of the notes and later paid $500 on the balance of $1,766 under the impression that the payment was in full settlement. The difference of $1,266 is presently in litigation. Petitioner's indebtedness to Commercial Credit Corporation at one point was approximately $9,000 in connection with financing his purchase of new and used automobiles for the corporation. He had sufficient cars in closing out the business to reduce the debt to $1,400, and this was settled for $1,000 paid at the rate of $25 a month for three *12 years. These payments, aggregating $1,000, were made by petitioner and none were made by McHenry Motors. When petitioner closed McHenry Motors in 1950, it had approximately $2,000 in accounts receivable which he turned over to a collection agency in February of that year but less than $100 was collected. The furniture and fixtures were used in the payment of certain debts and no other assets were available when the corporation closed its business. Petitioner was not able to sell his interest in the corporation and never realized any money from a sale of his stock therein. The Commercial Credit Corporation repossessed all of the mobile property (cars) of McHenry Motors on or about November 24, 1948, but the corporation carried on business thereafter although at a decreasing volume. It obtained some financing thereafter from a finance company, Northern Illinois Corporation of De Kalb, for approximately sixty to ninety days. A very small amount of business was done by the corporation through 1949, but during this year petitioner put his brother, Richard, in charge and obtained outside employment in order to support himself. The last bookkeeping record of McHenry Motors was of a *13 check drawn on April 5, 1949, in full payment of a bill of Allied Motors, Inc. The certified public accountant who had handled the corporation's books was dismissed about January 1949. A mechanic was still employed in 1949. Petitioner paid many of his personal bills such as hospital, telephone, rent, gas and electricity through McHenry Motors' bank account. They were charged to petitioner's personal drawing account on the corporation's books. McHenry Motors did not sell any cars after April 1949 but carried on a servicing business on a cash basis until January 1950. This was done as an accommodation service to former customers and the corporation did not make any money on it. Charges were based on the cost of labor and material only without the addition of any profit margin. The corporation ceased all operation on January 10, 1950. It had lost money in 1948 and 1949. Petitioner's returns for 1950, 1951, and 1952 reported the following: 1950
1951
1952
Total Income
$ 4,909.40
$ 7,504.23
$5,767.74
Deductions and Exemptions: Business
Investment: Stock investment in Mc-
Henry County Motor Sales, Inc., an
Illinois Corporation. Company failed
in 1949. Original cost and assess-
ments on stock and carry-overs
8,500.00
7,273.93
3,317.42
Other deductions
633.33
547.72
702.30
5 exemptions
3,000.00
3,000.00
3,000.00
Total
$12,183.33
$10,821.65
$7,019.72
Loss carry-overs
$7,273.93
$ 3,317.42
$1,251.98
*14 An internal revenue agent made a supplementary examination of McHenry Motors on or about March 19, 1956, and was supplied with the corporation's cash journal, general journal and ledger which records pertained to the period January 19, 1948, through October 31, 1948. He was also supplied with a bound check book stub record which had entries running until April 5, 1949. From these records, the agent prepared the following incomplete balance sheet of McHenry Motors as of October 31, 1948: Assets
Cash
$ 52.33
Notes Receivable
317.00
Accounts Receivable
1,744.92
Inventory: Parts and Accessories
1,866.82
Prepaid Rent
690.00
Furniture and Fixtures
1,039.31
Total
$ 5,710.38
Liabilities
Accounts Payable
$ 1,307.44
Notes Payable
13,048.97
Accrued Expenses
Unknown
Capital Stock
Unknown
He also prepared the following statement of profit and loss for the corporation for the period January 1, 1948, to October 31, 1948: Sales
New Autos
$102,533.43
Used Autos
44,389.35
Accessories
1,948.00
$148,870.78
Less: Cost of Goods Sold
Opening Inven-
tory
Unknown
New Autos
87,697.09
Used Cars
51,785.05
Accessories
8,900.65
Total
$148,382.79
Less: Closing In-
ventory (Parts
and Accessories)
1,866.82
146,515.97
Gross Profit
$ 2,354.81
Other Income: Labor
$ 1,688.61
Miscellaneous
839.15
2,527.76
Total
$ 4,882.57
Less: Expenses
Selling Expense
$ 12,374.30
General Ex-
pense
8,580.32
Miscellaneous
Expense
411.50
21,366.12
Balance (Profit
or Loss)
($16,483.55
*15 In his deficiency notice, the Commissioner disallowed the following deductions claimed as business investment losses on the ground that they were not allowable under section 23(e) or (s) or any other section of the Internal Revenue Code of 1939: Deduction
Year
Disallowed
1950
$8,500.00
1951
7,273.93
1952
3,317.42
The stipulation of facts and the exhibits annexed thereto are incorporated herein by this reference. Opinion KERN, Judge: The record herein is far from satisfactory and the issues have not been clearly drawn. We have, however, pieced together the following chronology of events and arguments: Petitioner organized McHenry Motor Sales, Inc. on September 15, 1947, and acquired all of its stock for $2,500. The corporation was a franchised dealer in Kaiser-Frazer motor cars but petitioner was forced to secure financing in his own name and to advance the corporation money. In his 1950 Federal income tax return he reported that the corporation had failed in 1949 and claimed a deduction for $8,500 as the original cost and assessments on his stock investment therein. The additional $6,000 above the cost of the stock appears to have been the balance *16 owed petitioner by the corporation for advances and for loans repaid by him on its account. The petitioner now seems to take the position that he, and not the corporation, operated the business here in question, that the losses resulting from the operation of the business were his operating losses and not those of the corporation, and that he personally is entitled to a net operating loss carry-over to 1951 and 1952 of a loss in 1950 equal in amount to the loss stated in his return as "Stock investment in McHenry County Motor Sales, Inc., an Illinois Corp." which "failed in 1949." The petition filed herein was signed by petitioner but the verification was not signed at all although it was notarized. While this is ground for dismissal of the proceeding for failure to properly prosecute, Tax Court Rules 7(a)(2) and (c)(4)(D), no objection thereto was made by the respondent and the defect is not jurisdictional. Gibson Amusement Co., 22 B.T.A. 1212; Monitor Amusement Co., 22 B.T.A. 1214. We may, therefore, consider the case on its merits. The petition assigned two errors to the respondent's determination of deficiencies for 1951 and 1952, as follows: "A" *17 That deficiencies on the 1951 and 1952 income tax returns, determined after March 15, 1954 are also barred by the Statute of Limitation applying to the 1950 income tax return with the "carry-over" of the "net operating loss" determined and set forth therein. "B" That the 1950 income tax return showed cash receipts and a loss deduction of $8,500.00 from the operation of taxpayer's business, which is further explained and set forth in exhibit "B", attached hereto and made a part hereof, giving evidence of a "net operating loss" from the taxpayer's business; and that no applicable proof was given in the notice of deficiency to support the declarations disallowing the taxpayer's deductions of the "net operating loss" and "carry-over", and to determine a deficiency thereby. In his opening statement, petitioner's counsel contended, in effect, first, that petitioner was personally entitled to deduct the "ordinary business loss" from the operation of the corporation since he was its sole owner and it was really his alter ego, and, second, that if this Court did not so hold, then petitioner was entitled to capital loss carry-overs of $1,000 a year for five years. In his brief, petitioner *18 directed his argument only to the effect of the statute of limitations and to the question of disregarding the corporate entity. No mention was made of his alternative contention that he was entitled to a capital loss carry-over. [1] This alternative issue was not raised by the original petition and no amended petition was filed. The respondent has objected on brief to its being considered and we agree that this point has not been properly placed before us. Cf. Arthur C. Ruge, 26 T.C. 138; William Greenberg, 25 T.C. 534; William C. Baird, 25 T.C. 387. There is no merit to petitioner's argument that the respondent is barred from disallowing the loss deduction claimed in 1950 and the carry-overs therefrom to 1951 and 1952 because the statute of limitations bars the assessment of any deficiency for 1950. Even though 1950 is a closed year for the purpose of the assessment of a deficiency for that year, this Court has jurisdiction to consider such facts with respect to petitioner's *19 1950 tax as may be necessary for a redetermination of his taxes for 1951 and 1952, which years are still open. Section 272(g), Internal Revenue Code of 1939; Phoenix Coal Co., Inc. v. Commissioner, (C.A. 2, 1956) 231 Fed. (2d) 420; W. M. Ritter Lumber Co., 30 B.T.A. 231, 277, 278. The burden of proving that the respondent's determination of the deficiencies for 1951 and 1952 was erroneous, in whole or in part, is upon petitioner. There is nothing in the record before us to establish the existence of exceptional circumstances under which we might be justified in disregarding the corporate entity as petitioner urges. Burnet v. Clark, 287 U.S. 410. There is nothing in the record to establish that petitioner was regularly engaged in the trade or business of investing in the stock of corporations or otherwise financing such enterprises. Petitioner's loss in 1950, assuming that it was incurred in such year, (an assumption which we gravely doubt), was not a net operating loss for the purpose of being carried over to 1951 and 1952. Section 122(a) and (d)(5); Dalton v. Bowers, 287 U.S. 404; Irving Rothbart, 26 T.C. - (filed June 25, 1956). *20 No evidence was adduced as to petitioner's 1949 gross income and the deductions therefrom. Thus, even if petitioner had a net operating loss in 1950, he has failed to prove the amount by which the carry-overs to 1951 and 1952 would have been reduced by the required prior carry-back to 1949. Section 122(b)(1)(B) and (b)(2)(B). Petitioner has failed to sustain his burden of proof and the deficiencies determined by respondent for 1951 and 1952 are sustained. Decision will be entered for the respondent. Footnotes
1. Petitioner in his brief states the issues involved in this case to be "whether the loss sustained by petitioner was an operating loss subject to carry-over."↩